UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

WILLIAM NEMES and MARY ANN NEMES, husband and wife,

        Plaintiffs,

        v.

FRONTIER BANK,

        Defendant.

No. CV-06-061-FVS

ORDER

**THIS MATTER** comes before the Court without oral argument for resolution of two motions. The plaintiffs are represented by Michael D. Kinkley and Timothy Durkop. The defendant is represented by David Riley and Francois L. Fischer.

**BACKGROUND**

William and Mary Ann Nemes owned a company that sold certain business assets to Gale Gallagher. At the same time, the company borrowed money from Frontier Bank. The Nemes' guaranteed the loan. Disputes arose. Ms. Gallagher stopped making payments to the company which, in turn, stopped making payments to Frontier. As a result, Frontier "charged off" the loan; that is to say, Frontier classified it as "a non-performing asset that need[ed] to be considered in calculating [its] reserve for credit losses." (Declaration of Gale Inman, at 2.) Ms. Gallagher and Frontier filed actions in state court. The Nemeses filed for relief under chapter 7 of the Bankruptcy

ORDER - 1

Code. Frontier filed an adversary action in bankruptcy court. Eventually, the parties resolved their differences. They executed a written settlement agreement on or about December 3, 2002. Paragraph 3 states in pertinent part:

> Frontier Bank shall void the Promissory Note . . ., and said note and loan shall be rendered non-negotiable and satisfied in full, with no additional monies, fees, interest, or costs due or owing, and any collateral exonerated. Neither [the Nemeses nor Ms. Gallagher] shall have further liability on said loan.

(Declaration of Scott Suchan, Exhibit 13). However, the agreement does not address, much less specify, the manner in which Frontier was to report the history of the loan prior to settlement. Neither paragraph 3 nor any other paragraph requires Frontier to ask the major credit reporting agencies to remove information indicating that the Nemeses failed to make payments and that the loan was "charged off." It is unclear, given the record as it now stands, whether the parties ever considered this issue. In any event, at some point after the agreement was executed, Mr. Nemes obtained copies of the credit reports prepared by the major credit reporting agencies. On December 2, 2004, he mailed letters indicating that their reports contained two errors, one of which is material to this action. His letters to the credit reporting agencies state in pertinent part, "Frontier Bank, real estate charge off was not a charge off." (Declaration of William Nemes, ¶ 3, at 2.) The credit reporting agencies notified Frontier of Mr. Nemes' allegation. The dispute was referred to Gale Inman, "a Vice President and special Assets Officer for Frontier Bank." (Inman Declaration, ¶ 1, at 1.) She "reviewed the loan file and the Bank's

ORDER - 2

computer records and verified the loan had indeed been charged off in December 2000 and thereafter resolved. Accordingly, the Bank verified to the credit reporting agencies that the loan had been charged off and had a zero balance owing." (Inman Declaration, ¶ 4, at 2.) At some point thereafter, Mr. Nemes again obtained copies of the relevant credit reports. On September 6, 2005, Mr. Nemes again wrote to them. "As I stated in my previous letter," said Mr. Nemes, "Frontier Bank is incorrectly reporting a high credit real estate loan as a charge off. Not only is the charge off incorrect, but at no time did we ever have a real estate loan with Frontier Bank." (Nemes Declaration, ¶ 7, at 2.) Besides writing to the credit reporting agencies, Mr. Nemes also sent a copy of the settlement agreement to Frontier. The credit reporting agencies again notified Frontier of Mr. Nemes' allegation. Once again, the dispute was referred to Ms. Inman, who says:

> I determined that the Bank was incorrectly reporting that the loan was a real estate loan and promptly had the Bank's Loan Center modify the reported data to reflect that the loan was a business loan. I again confirmed that the loan had been charged off in December 2000. Because Mr. Nemes included a copy of the Settlement Agreement in his correspondence to the Bank, the Bank's Loan Center reported additional information to the credit reporting agencies to the effect that the Bank had accepted a settlement in full payment of the account. The Bank continued to report that the loan had a zero balance.

(Inman Declaration, ¶ 7, at 3.) The Nemeses were dissatisfied with this response. They filed suit under The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*

**15 U.S.C. § 1681s-2(b)**

If a consumer disputes information that a credit reporting agency ("CRA") maintains in a file concerning the consumer, the CRA must

ORDER - 3

report the dispute to the person who provided the information. 15 U.S.C. § 1681s-2(b). Frontier is a "person" for purposes of the FCRA. 15 U.S.C. § 1681a(b). Once the CRA notifies the information-providing person (but not until that point), the person has four duties. These are set forth in 15 U.S.C. § 1681s-2(b):

> to conduct an "investigation with respect to the disputed information;" to review all relevant information provided by the CRA; to report the results of its investigation to the CRA; and if the investigation finds the information is incomplete or inaccurate to report those results "to all [nationwide] consumer reporting agencies to which the person furnished the information."

*Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059 (9th Cir.2002) (quoting 15 U.S.C. § 1681s-2(b)). The Nemeses argue that Frontier failed to fulfill these four duties and that they are entitled to summary judgment on this issue. The Nemeses are incorrect. Whether Frontier's investigation was unreasonable is a factual question; one that normally is reserved for trial. *See Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir.2005). Summary judgment is proper only if the Nemeses have established "beyond question" that Frontier's investigation was unreasonable. *Crabill v. Trans Union*, 259 F.3d 662, 664 (7th Cir.2001). They have failed to do so. A consumer has an obligation to provide enough information concerning the nature of the dispute so that the person who furnished the information can investigate the matter. *See, e.g., Westra*, 409 F.3d at 827 (Credit Control's investigation in this case was reasonable given the scant information it received regarding the nature of Westra's dispute."). Mr. Nemes' complaints to the credit reporting agencies were somewhat cryptic. In his first letter, he

said, "[C]harge off was not a charge off." In his second letter, he said, "Frontier Bank is incorrectly reporting a high credit real estate loan as a charge off. Not only is the charge off incorrect, but at no time did we ever have a real estate loan with Frontier Bank." A jury could find that, in both instances, Ms. Inman reasonably thought that Mr. Nemes was alleging that Frontier had never charged off the loan. Ms. Inman now knows that Mr. Nemes had something else in mind. What he meant to communicate was something like this, "Frontier agreed to void the promissory note, so Frontier should stop reporting that my wife and I failed to make loan payments and that the loan was charged off." But that is not what he said. While a reasonable jury might find that his communications to the credit reporting agencies provided adequate notice of his actual allegations, a reasonable jury would not be compelled to make such a finding. Consequently, the Nemeses are not entitled to summary judgment with respect to whether Frontier violated 15 U.S.C. § 1681s-2(b).

**15 U.S.C. §§ 1681n, 1681o**

The remedies available under the FCRA depend upon whether the violation was negligent, 15 U.S.C. § 1681o, or willful, 15 U.S.C. § 1681n. The Nemeses argue that Frontier willfully violated 15 U.S.C. § 1681s-2(b). In this context, the term "willfully" means "a conscious disregard of the law[.]" *Reynolds v. Hartford Fin. Servs. Group, Inc.*, 435 F.3d 1081, 1098 (9th Cir.2006) (internal punctuation and citation omitted), *cert. granted sub nom. GEICO Gen. Ins. Co. v. Edo*, --- U.S. ----, 127 S.Ct. 36, --- L.Ed.2d ---- (Sept. 26, 2006).

ORDER - 5

Frontier acted willfully if it knew that its conduct contravened rights possessed by the Nemeses or if it acted in reckless disregard of whether its conduct contravened their rights. *See id.* (citation omitted). Given the enigmatic nature of Mr. Nemes' letters, it is questionable whether a reasonable jury could find that Frontier's conduct was willful. However, assuming for purposes of argument that the evidence would permit such a finding, the outcome is not beyond question. That being the case, the Nemes are not entitled to summary judgment with respect to whether Frontier's conduct was willful within the meaning of 15 U.S.C. § 1681n.

**IT IS HEREBY ORDERED:**

1. The Nemes' motion for summary judgment (**Ct. Rec. 18**) is denied.

2. The parties' joint motion for modification of the scheduling order (**Ct. Rec. 52**) is granted. The scheduling order (**Ct. Rec. 14**) is vacated. If necessary, the Court will conduct a scheduling conference after the parties have completed mediation.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this   27th   day of November, 2006.

>       s/Fred Van Sickle
>         Fred Van Sickle
>   United States District Judge

ORDER - 6